UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| DONNA MCCLURE, *as guardian for* MARTINA MCCLURE, <br><br> Plaintiff, <br><br> v. <br><br> K&K INSURANCE, et al., <br><br> Defendants. | Civil Action No. 6:22-CV-092-CHB-HAI <br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Before the Court are the Motions to Dismiss filed by Defendant Zurich American Insurance Group [R. 24] and Defendant K&K Insurance Group [R. 40].[1] In their Motions, Zurich & K&K seek dismissal of Plaintiff Donna McClure's Amended Complaint [R. 22]. [*See* R. 24; R. 40]. Plaintiff responded to both Motions [R. 31; R. 41], and Zurich and K&K both replied [R. 34; R. 42]. For the reasons that follow, the Court will grant the Defendants' Motions to Dismiss.

**I.    BACKGROUND**

Martina McClure is a former student of South Laurel High School. [R. 22, p. 3]. On September 16, 2016, she was assaulted by another student on school grounds, which caused her to "suffer[] severe and permanent injuries, including traumatic brain injuries." [*Id.*]. As a result, "she has incurred and continues to incur substantial medical bills." [*Id.*]. The costs of Martina's medical treatment were largely covered by Central States Health & Welfare Fund through an ERISA governed health insurance policy of her father, "with Plaintiff paying the rest out of pocket." [*Id.* at 5, 9].

---

[1] The Court will refer to these Defendants as "Zurich" and "K&K."

Plaintiff, as guardian for Martina, sued several school employees in Laurel Circuit Court and subsequently settled her claims through payment by a non-party casualty insurer. [*Id.* at 3; R. 22-2]. Consequently, Central States asserted a statutory lien against the settlement proceeds. [R. 22 at 6]. Under the terms of the Central States policy, any other policy providing specific risk coverage bears primary responsibility for the insured's losses. [*Id.*].

At the time of the assault, the Laurel County Board of Education was insured by Zurich through a blanket accident policy administered by K&K. [*Id.* at 4]. The policy covered losses incurred during school activities and designated all registered students as "Insureds." [*Id.*]. "Plaintiff provided all of her medical providers with both Zurich and Central States proof of insurance due to the immediate need of treatment and the substantial expense of said treatment." [*Id.* at 7].

After receiving unpaid medical bills from Martina's providers, "Plaintiff asked all providers to rebill K&K for the medical treatment rendered." [*Id.*]. "When Plaintiff continued to receive outstanding medical bills for Martina McClure's providers that were not being paid by K&K, Martina McClure sought counsel." [*Id.*]. On October 16, 2017, Plaintiff submitted a proof of claim to K&K.[2] [*Id.*]. In March 2018, K&K advised that coverage would be denied. [*Id.* at 8]. Plaintiff disputed K&K's determination, and K&K "reiterated its coverage position." [*Id.*]. K&K eventually forwarded Plaintiff's communication to Zurich, who later "indicated it would pass it on to counsel; Plaintiff never heard from Zurich again." [*Id.* at 9].

On April 28, 2022, Plaintiff filed her initial Complaint. [R. 1]. The initial Complaint asserted the following claims: civil enforcement under 29 U.S.C § 1132 against Zurich (Count I);

---

[2] This proof of claim was filed several times in the record, and the Court notes that it contains personal identifiable information. The Court will thus order the Clerk of Court to seal the exhibits that contain the proof of claim. [*See* R. 21-1; R. 22-5; R. 41-2; R. 42-6].

breach of contract against Zurich (Count II); unjust enrichment against Zurich (Count III); equitable estoppel against Zurich and K&K (Count IV); and misrepresentation against Zurich and K&K (Count V). [*Id.* at 7–11]. In June 2022, K&K and Zurich filed Motions to Dismiss. [R. 12; R. 15]. Those Motions were denied by the Court [*see* R. 35] after Plaintiff filed an Amended Complaint [*see* R. 22].

Plaintiff's Amended Complaint, filed June 28, 2022, asserts the following claims: civil enforcement under 29 U.S.C § 1132 against Zurich (Count I); breach of contract against Zurich (Count II); unjust enrichment against Zurich (Count III); declaratory judgment against Zurich (Count IV); equitable estoppel against Zurich and K&K (Count V); and misrepresentation against Zurich and K&K (Count VI).[3] [*Id.* at 9–15]. The Defendants then filed their present Motions to Dismiss. [R. 24; R. 40]. These Motions have been fully briefed.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up).

Simply stated, the Court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers,*

---

[3] Plaintiff has conceded her civil enforcement claim. [*See* R. 31, p. 3] ("Plaintiff agrees with Defendant Zurich that dismissal of Count I of her Complaint against Zurich is proper").

*USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (per curiam). And, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Here, Plaintiff attached several exhibits to her Amended Complaint, including the Policy and various claims-related communications between Plaintiff, Zurich, and K&K.[4] [*See generally* R. 22]. The Court can consider these exhibits without converting either Motion to Dismiss into one for summary judgment. *See S. Side Quarry, LLC v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 28 F.4th 684, 694 n.3 (6th Cir. 2022).

**III.   ANALYSIS**

In their Motions, Zurich and K&K each seek dismissal of Plaintiff's Amended Complaint. For its part, Zurich argues that: (1) Plaintiff's state law claims are preempted by ERISA; (2) Plaintiff's claims are time barred by a contractual limitations period; and (3) Plaintiff's misrepresentation claim "should be dismissed because it is entirely based on the terms of the Zurich policy." [*See* R. 24]. Similarly, K&K argues that Plaintiff has failed to state a claim for equitable estoppel or for misrepresentation under Kentucky law. [*See* R. 40].

**A.   Preemption**

The Court must first address Zurich's argument that Plaintiff's state law claims are preempted by ERISA. [R. 24, pp. 6–7]. To determine whether ERISA preempts a state law claim, federal courts apply a two-step test. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). "First, the plaintiff must be complaining about a denial of benefits under the terms of her ERISA

---

[4] The Defendants also attached several exhibits to their briefing on their Motions to Dismiss. [*See, e.g.*, R. 24-2 (Zurich policy)].

plan," and "[s]econd, the plaintiff must only allege the violation of a legal duty (federal or state) that is *dependent* on ERISA or on the ERISA plan's terms." *K.B. by and through Qassis v. Methodist Healthcare-Memphis Hosps.*, 929 F.3d 795, 800 (6th Cir. 2019) (emphasis in original). "A state law claim that meets both requirements is in essence a claim for the recovery of an ERISA plan benefit" and will be preempted. *Id.* at 800–01 (internal quotation marks omitted).

Regarding the first step in this case, it is true that Plaintiff references the Central States policy in her Amended Complaint in counts other than the ERISA claim. [*See, e.g.*, R. 22, p. 10 ("Based on the express terms of the Central States policy, Zurich is the Primary Insurer of Martina McClure's medical expenses related to the injuries she sustained while on school premises and participating in a school activity.")]. However, Plaintiff is really challenging Zurich's actions under the insurance policy. [*See id.* at 11 ("This denial of coverage is a breach of the express terms of the contract of insurance issued by Zurich for which Laurel County Board of Education paid substantial premiums.")]. In other words, Plaintiff "makes no claim at all against [the] ERISA plan," meaning the first step of the preemption test is not satisfied. *See Qassis*, 929 F.3d at 801.

Moreover, regarding the second step, the Defendants cannot show that Plaintiff "complains only of duties breached under ERISA, not any independent legal duty." *Id.* An allegation from Plaintiff's equitable estoppel claim illustrates this point: "The policy issued by Zurich, if interpreted the way Zurich has interpreted it, is unreasonable, wholly illusory, and would only on the rarest of occasions result in payments to insureds." [R. 22, p. 12]. At bottom, Plaintiff alleges that the Defendants "breached a duty that stems from [the] insurance contract[], not from [the] ERISA plan." *Qassis*, 929 F.3d at 801-02. This means her claims are "based upon a duty that is independent of ERISA and the plan terms," and that the second step of the test is likewise not satisfied. *See id.* at 802 (internal quotation marks omitted).

Because both steps of the preemption test are not met based on the allegations contained within Plaintiff's Amended Complaint, her state law claims are not preempted by ERISA. *See id.* at 803 (explaining that a defendant bears burden to show that a plaintiff's claims are preempted).

### B. Limitations Period

Zurich next argues that "Plaintiff fails to state claims because she brings them after the contractual limitations period ran."[5] [R. 24, p. 4]. In response, Plaintiff maintains that a court should not dismiss claims on timeliness grounds at the motion to dismiss stage. [*See* R. 31, p. 4]. Plaintiff cites an opinion from the Western District of Kentucky in support of her position:

> Dismissal of a claim under Rule 12(b)(6) on grounds that it is barred by a limitations period is warranted only if "the allegations in the complaint *affirmatively show* that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (emphasis added). In other words, it must be "apparent from the face of the complaint that the limit for bringing the claim[s] has passed." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (alteration in original) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)).

[*Id.* (quoting *B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 633 (W.D. Ky. 2019))].

Here, the Court observes that Plaintiff falls within the rule expressed in *Schuhmann*: the face of Plaintiff's Amended Complaint and the insurance policy it references provide the Court with all the information it needs to make a determination regarding timeliness. *See Schuhmann*, 380 F. Supp. 3d at 633. Courts, including this one, have granted motions to dismiss based on contractual limitations provisions, so the Court may address timeliness at this stage of the litigation. *See, e.g.*, *Cent. Jersey Constr. Equip. Sales, LLC v. LBX Co.*, No. 5:21-CV-203-REW,

---

[5] Plaintiff has conceded her civil enforcement claim, so her remaining claims include state law claims for breach of contract, unjust enrichment, equitable estoppel, and misrepresentation, and a federal claim for declaratory judgment. [*See* R. 22]. Zurich does not make a distinction among these claims when arguing that they are untimely, and although the parties do not brief the issue, Sixth Circuit case law directs that "[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." *See Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997).

2022 WL 2161482, at *6 (E.D. Ky. June 15, 2022), *appeal docketed*, No. 22-5581 (6th Cir. July 11, 2022) ("In the face of a clear term, between commercially contracting parties, and absent an indication of a matter for dispute in further litigation, the Court will apply [the contractual provision] and dismiss the claims that pertain to the Agreement[.]").

Several provisions of the Zurich policy are relevant to the Court's consideration:

> G. SUIT AGAINST US: No action on this **Policy** may be brought until sixty (60) days after written Proof of Covered Loss has been sent to **Us.** Any action must commence within three (3) years . . . of the date of the written Proof of Covered Loss was required to be submitted. . . .
>
> C. PROOF OF COVERED LOSS: Written Proof of Covered Loss, acceptable to **Us,** must be sent within ninety (90) days of the **Covered Loss**. Failure to furnish Proof of Covered Loss acceptable to **Us** within such time will neither invalidate nor reduce any claim if it was not reasonably possible to furnish the Proof of Covered Loss, and the proof was provided as soon as reasonably possible.

[R. 24-2, pp. 6-7]. The policy also contains the following choice of law provision: "This **Policy** is delivered in, and subject to the laws of the Contract Situs in which it is issued." [*Id.* at 1]. According to the policy, the Contract Situs is Kentucky.[6] [*Id.* at 3].

Zurich argues that, because Martina's injury occurred on September 16, 2016, and because Plaintiff did not file in this Court until April 28, 2022, her claims are untimely.[7] [*See* R. 24, pp. 5-6]. Notably, Plaintiff does not dispute the validity of the contractual limitations provision, except

---

[6] Under Kentucky law, "there is a solid line of case law . . . that upholds the validity of contractual terms that provide for shorter limitation periods than the general statute of limitations." *Webb v. Kentucky Farm Bureau Ins. Co.*, 577 S.W.2d 17, 19 (Ky. Ct. App. 1978). Further, as pointed out by Zurich, these provisions conform to Kentucky law. [*See* R. 24, p. 5 (citing KRS 304.18-060(3) and KRS 304.18-070(7))].

[7] For ease of the reader, under the policy provisions, the covered loss was Martina's accident, which occurred on September 16, 2016, meaning the proof of loss had to be filed within 90 days (December 2016) and suit had to be filed within three years of when the proof of loss was required to be submitted (December 2019).

a perfunctory assertion that she "contests that the statute of limitations has run under the policy language and operation of Kentucky insurance caselaw." [R. 31, p. 3]. Such cursory treatment is too underdeveloped to constitute a real challenge to the enforceability of the limitations period. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (cleaned up).

Rather, Plaintiff argues that "the statute of limitations has clearly not run in the present action under KRS § 413.170, as at the time of her injury on September 16, 2016, Ms. McClure was a minor, and immediately upon reaching the age of majority, Ms. McClure was adjudicated wholly disabled." [R. 31, p. 4]. In other words, Plaintiff argues that the statute of limitations was tolled under Kentucky law, making her complaint timely filed, and that "Zurich cannot affirmatively show that the Complaint is time-barred." [*Id.* at 5].

The plain language of KRS 413.170(1) suggests otherwise. The statute provides:

> (1) If a person entitled to bring any action mentioned in KRS 413.090 to 413.160, except for a penalty or forfeiture, was, at the time the cause of action accrued, an infant or of unsound mind, the action may be brought within the same number of years after the removal of the disability or death of the person, whichever happens first, allowed to a person without the disability to bring the action after the right accrued.

KRS 413.170(1); *see Jackson v. State Auto. Mut. Ins. Co.*, 837 S.W.2d 496, 497 (Ky. 1992) (describing KRS 413.170(1) as the state's general saving statute). By use of the phrase "*the action may be brought within the same number of years*," the statute relates when an action may be brought back to the limitation periods provided by statute in KRS 413.090 to 413.160. *See* KRS 413.170(1); *Jackson*, 837 S.W.2d at 498 (declining to apply the general saving statute to an action governed by a statute not explicitly listed in KRS 413.170(1)).

Because the Supreme Court of Kentucky does not appear to have addressed the issue presented in this case, the Court is bound by controlling decisions of that court and must anticipate how that court would decide this case. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008). A review of Kentucky case law reveals that the Kentucky Supreme Court has at least once applied the general saving statute of KRS 413.170(1) to an action not explicitly covered by KRS 413.090 to 413.160. *See Lemmons v. v. Ransom*, 670 S.W.2d 478, 479 (Ky. 1984) ("Consequently KRS 413.170 tolls the two-year statute of limitations under the no-fault statute in cases of minors and persons under disability."). However, the Kentucky Supreme Court has also declined to apply the general saving statute to actions covered by different statutory schemes. *See Jackson*, 837 S.W.2d at 498 (not applying general saving provision in case covered by KRS 304.39-230(5)); *Hutto v. Bockweg*, 579 S.W.2d 382, 385 (Ky. Ct. App. 1979) (finding the general saving statute did not apply in a Blue Sky Act case).

Importantly, the limitations period in this case is not provided by statute but by contract. Thus, general Kentucky law regarding the interpretation of insurance contracts is also salient:

> the terms of an insurance contract must control unless contravening public policy or a statute, and [] the courts cannot make a new contract for the parties under the guise of interpretation or construction but must determine the rights of the parties according to the terms agreed upon by them. However, it is a rule of general acceptation, arising from the intricacies of such a contract and the fact that it was prepared by the insurance company, that a policy is construed more strictly against the company; and where there is room for a different interpretation, that most favorable to the insured or beneficiary will be adopted.

*Cheek v. Commonwealth Life Ins. Co.*, 126 S.W.2d 1084, 1089 (Ky. 1939).

Although Kentucky courts have not passed upon this issue, Sixth Circuit precedent provides helpful guidance. *See Curry v. Vanguard Ins. Co.*, 923 F.2d 484 (6th Cir. 1991). In *Curry*, the Sixth Circuit considered whether (a now repealed) Kentucky statute tolled a limitations period in an insurance contract for an individual who was incarcerated. *See id.* at 486. Upon

review, the court examined "Kentucky's policy favoring limitations of actions under insurance policies" and Kentucky precedent in which the state's highest court declined to apply a tolling statute "in the context of an insurance policy." *See id.* at 486-87 (citing *Turner v. California Ins. Co.*, 254 S.W.2d 481, 483 (Ky. 1953)). Under those principles, the Sixth Circuit stated that it "believe[d] that the Kentucky Supreme Court would conclude that [the tolling statute did] not operate to toll a limitations period created by an insurance contract." *Id.* at 487.

The Court is persuaded by the Sixth Circuit's reasoning in *Curry*.[8] Although the Supreme Court of Kentucky has extended the application of the general saving statute in at least one instance, see *Lemmons*, 670 S.W.2d at 479, that decision rests on an analysis of Kentucky's No-Fault Insurance Act. *See id.* ("[A]n infant or person under disability having a cause of action arising from injuries received in a motor vehicle accident has two years after the attainment of his majority or release from disability in which to file a tort liability claim. This right has not been affected by the no-fault statute."). Thus, *Lemmons* is not dispositive of the issue before the Court.

Instead, the Court finds that "Kentucky's policy favoring limitations of actions under insurance policies" and Kentucky case law support the conclusion that KRS 413.170(1) does not operate to toll the contractual limitations period in this case. *See Curry*, 923 F.2d at 487; *see also Turner*, 254 S.W.2d at 483 ("The language of the section relied upon by appellant expressly confines its application to the operation of a general statute of limitations, but we are instead

---

[8] More recently, the Sixth Circuit declined to determine whether KRS 413.170(1) applied to a contractual limitations provision. *See D.S.S. by & through McDowell v. Prudential Ins. Co. of Am.*, No. 21-5315, 2022 WL 95165, at *5 (6th Cir. Jan. 10, 2022). The Court reasoned: "We need not reach the merits of this argument because, even assuming that KRS § 413.170 could apply to toll the Plan's one-year statute of limitations, the limitations period would still have already lapsed as to Brown—the only son with a viable claim." *Id.* In the underlying case there, the Western District of Kentucky noted that the Plaintiffs had "not provided the Court with any authority or argument to support the contention that KRS 413.170 tolls the Plan's one-year limitations period." *See D.S.S. v. Prudential Ins. Co. of Am.*, No. 3:20-CV-248-CRS, 2021 WL 1069040, at *8 n.6 (W.D. Ky. Mar. 19, 2021).

concerned with a contractual limitation provided for by the terms of the agreement upon which appellant's claim is founded."). Because Plaintiff filed suit well after the three-year limitations period expired, her claims are untimely.

### C. The Defendants' Other Arguments

Finally, Zurich argues that Plaintiff's misrepresentation claim "should be dismissed because it is entirely based on the terms of the Zurich policy," and K&K argues that Plaintiff fails to state a claim for equitable estoppel and for misrepresentation.[9] [R. 24; R. 40]. Upon review, the Court finds that both of these claims by Plaintiff fail for the same reason: they fail to allege a misrepresentation by the Defendants.

"Under Kentucky law, equitable estoppel requires both a material misrepresentation by one party and reliance by the other party." *See Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010).[10] Further, as cited by Plaintiff, a "fraud through misrepresentation" claim requires a material representation that the defendant knows is false. *See Giddings & Lewis, Inc. v. Indus.*

---

[9] K&K specifically argues that Plaintiff's misrepresentation claim fails to satisfy the particularity requirement of Rule 9. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

[10] As explained by the Supreme Court of Kentucky:

> The essential elements of equitable estoppel are[:] (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Fluke*, 306 S.W.3d at 62.

*Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011).[11]  Additionally, "[i]f, by the terms of a contract, a person promises to perform an act in the future and fails so to do, the failure is a breach of contract, not a fraudulent or deceitful act[.]" *Brooks v. Williams*, 268 S.W.2d 650, 652 (Ky. 1954).

In her Amended Complaint, Plaintiff asserts that the Defendants made "material representations" that she relied on [*see* R. 22, pp. 13-16], and in her briefing, she cites an email exchange as constituting a misrepresentation. [*See* R. 41, p. 6].  However, Plaintiff does not explain how this email conversation amounts to a material misrepresentation on behalf of K&K or Zurich.  To be sure, Plaintiff merely cites the email and simply claims it demonstrates a misrepresentation; such conclusory allegations are not sufficient to withstand a motion to dismiss. *See 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("[A] plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law.").  Thus, she has failed to state claims for equitable estoppel and misrepresentation.

### IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** as follows:

1. Zurich's Motion to Dismiss Plaintiff's Amended Complaint **[R. 24]** is **GRANTED.**

2. K&K's Motion to Dismiss Plaintiff's First Amended Complaint **[R. 40]** is **GRANTED.**

---

[11] Under Kentucky law:

> Fraud through misrepresentation requires proof that: (1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff.

*Giddings & Lewis, Inc.*, 348 S.W.3d at 747.

3. Plaintiff's Amended Complaint [R. 22] is **DISMISSED with prejudice.**

4. The Clerk of Court shall **SEAL** the exhibits that contain personal identifiable information: **[R. 21-1; R. 22-5; R. 41-2; R. 42-6].**

5. A separate judgment will enter.

    This the 13th day of March, 2023.

*/s/ Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY